UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

GERALD J. COON,

    Debtor.
_____/

GENE T. CHAMBERS, TRUSTEE,

    Plaintiff,
vs.

GERALD J. COON,

    Defendant.
_____/

Case No. 6:07-bk-00115-ABB
Chapter 7

FILED
APR 1 1 2008
CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

Adv. Pro. No. 6:07-ap-00048-ABB

## MEMORANDUM OPINION

This matter before the Court on the Complaint to Deny Discharge (Doc. No. 1) filed by Gene T. Chambers, the Chapter 7 Trustee and Plaintiff herein ("Trustee"), against Gerald J. Coon, the Debtor and *pro se* Defendant herein ("Debtor"), seeking the denial of the Debtor's discharge pursuant to 11 U.S.C. Sections 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), (a)(4)(D), and (a)(5). The final evidentiary hearing was held on November 8, 2007 and January 14, 2008 at which the Trustee, counsel for the Trustee, and the Debtor appeared.[1] The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

---

[1] The Debtor is *pro se* in this adversary proceeding. Counsel for the Debtor in his main case appeared at the January 14, 2008 hearing.

## **FINDINGS OF FACT**

The Debtor filed his Chapter 7 case on January 19, 2007 ("Petition Date") with the assistance of experienced bankruptcy counsel. He signed his Schedules and Statement of Financial Affairs (Main Case Doc. No. 1) "under penalty of perjury" that all answers are "true and correct."

He listed no real property in Schedule A (Main Case Doc. No. 1) and listed in Schedule B as his only assets: $350.00 for a checking and savings account with Bank of America, clothing, a 2006 Chevy truck, and a "1997 Savari Continental" motor home/travel trailer valued at $89,000.00. He claimed these assets as exempt in Schedule C pursuant to various West Virginia exemption statutes. He, as disclosed in Question 15 of his Statement of Financial Affairs, had previously lived at 5052 George Town Road, Horner, West Virginia 26372 (the "Residential Property").

The Debtor listed "None" for all other assets in Schedule B, including cash on hand. He listed in Question 1 in his Statement of Financial Affairs negative income of $1,278.00 for 2005 and no income for years 2006 and 2007. He answered "None" to Question 10 in the Statement of Financial Affairs requiring disclosure of transfers of property made within two years of the Petition Date. He answered "None" to Question 18 requiring disclosure of business interests. No amended Schedules or Statement of Financial Affairs were filed.

The Debtor sold two parcels of real property within one year of the Petition Date. He did not disclose the transfers or his receipt of income from the sales in his Statement of Financial Affairs. He sold an interest in an unimproved parcel of real property located in Lewis County, West Virginia to David R. Rexroad by deed dated January 30, 2006 and

2

received sales proceeds of $20,000.00.[2] The Debtor, as the sole owner, sold the Residential Property on May 23, 2006 to Sally Ahwesh Russell for $141,500.00 and received net sale proceeds of $27,062.37.[3] He moved to Florida shortly after the closing of the Residential Property sale.

The Debtor's failure to list the income from the 2006 real property sale transactions in Question 1 of his Statement of Financial Affairs constitutes a false oath or account. His failure to disclose the sale transactions in Question 10 of his Statement of Financial Affairs constitutes a false oath or account. The omissions are material. He made these false oaths or accounts knowingly and fraudulently.

The Debtor owned a checking account with Huntington Bank, Account No. 02523239288, prior to and on the Petition Date.[4] He made substantial deposits and withdrawals from the account. The account had a balance of $248.23 on the Petition Date. He failed to disclose the account in Schedule B. The omission is material. Such failure to disclose the account constitutes a false oath or account. He made the false oath or account knowingly and fraudulently.

The Debtor failed to disclose pre-petition employment income. He was employed pre-petition with the construction firm Albu & Associates, Inc. located in Winter Park, Florida. His W-2 for 2006 reflects he earned wages, tips, or other compensation of $12,760.00.[5] He was also employed pre-petition by Magnum Construction, Inc. and earned income from that employer. He received Social Security benefits income pre-

---

[2] Trustee's Exh. No. 2.
[3] Trustee's Exh. No. 3.
[4] Trustee's Exh. Nos. 5, 8.
[5] Trustee's Exh. No. 4.

3

petition with monthly direct deposits made to his Huntington Bank account of $1,017.00 in 2006 and $1,051.00 in 2007.[6]

The Debtor did not disclose any income for 2006 or 2007 in his Statement of Financial Affairs. The omissions are material. His failures to disclose his Albu & Associates, Inc. and Magnum Construction, Inc. employment and Social Security income constitute false oaths or accounts. He made the false oaths or accounts knowingly and fraudulently.

The Debtor had an interest in a farm implement business with his brother in the Midwest pre-petition. The business license was in the Debtor's name. The Debtor failed to disclose any information relating to such business in his Schedules or Statement of Financial Affairs. The omission is material. His failure to disclose his involvement in the business constitutes a false oath or account. He made the false oath or account knowingly and fraudulently.

The Debtor had an interest in a Bank of America checking account, Account No. 008980389681, and savings account, Account No. 008980390829 (collectively, "Bank of America Account"), prior to and on the Petition Date. The Bank of America Account is jointly titled in the Debtor's name and "ITF Russell Coon." Russell Coon is the Debtor's son. The account, presumably, is described in Schedule B as "Checking and Savings with Bank of America" with a balance of $350.00. No further description was provided.

The Debtor deposited most of the Residential Property proceeds of sale into the Bank of America Account and then withdrew the funds using a series of cashier's checks

---

[6] Trustee's Exh. Nos. 5, 8.

4

issued by Bank of America from October 12, 2006 through July 23, 2007.[7] Cashier's checks were issued to the Debtor, or to the Debtor jointly with his son, in the amounts of: $16,425.92; $15,000.00; $1,500.00; $12,000.00; $10,000.00; $8,000.00; $5,000.00; $4,500.00; $3,500.00; $2,500.00; and $2,000.00. The Debtor explained after the initial withdrawal of the entire sale proceeds balance through cashier's check number 2838124, he would take from each subsequent cashier's check a certain amount for expenses, keep the cash balance on his person, and then submit the cash balance to a Bank of America teller for the issuance of a new cashier's check.

The Debtor's purpose in keeping the cash on his person and not in a bank account was to protect the funds from execution. A judgment was entered against the Debtor in the amount of $93,490.16 and in favor of Marilyn Griffin and Laraine Coon, the Debtor's sister, jointly and severally, by the Circuit Court of Lewis County, West Virginia on September 6, 2006.[8] The State Court found the Debtor sold, without authority, a parcel of land and timber owned jointly by the three parties.

The Debtor had notice of entry of the judgment. The State Court sent a certified copy of the judgment to the Debtor at 2929 Erksine Drive, Oviedo, Florida 32765, his original address of record in the bankruptcy case.

The Debtor listed "Marilyn Coon," not Marilyn Griffin who is a named co-plaintiff, as a creditor in Schedule F for a "consumer debt" of an "unknown" amount. He did not list Laraine Coon as a creditor. He, in contrast, listed "Laraine E. Coon" and "Marilyn Griffin" as plaintiffs in Question 4 of his Statement of Financial Affairs. He

---

[7] Trustee's Exh. No. 7.
[8] Trustee's Exh. No. 2.

5

described the nature of the West Virginia proceeding as "civil" with a disposition of "judgment." His Schedule F disclosure regarding the judgment creditors and judgment debt is incomplete and misleading.

The Debtor had approximately $15,000.00 of the Residential Property sale proceeds in his possession when he first met with bankruptcy counsel. He, despite listing "None" for cash or cash equivalents in Schedule B, admitted he held at least $12,000.00 in cash from the Residential Property sale on the Petition Date. He had Bank of America issue him a cashier's check for $12,000.00 on January 25, 2007, six days after the Petition Date.[9] The Debtor did not turn over the funds to the Trustee.

The Debtor asserted he did not disclose or turn over the $12,000.00 because he understood the funds were exempt as the proceeds of the sale of his West Virginia homestead. He stated he understood "exempt" meant the funds did not need to be disclosed in his Schedules. The Debtor was given the opportunity to waive the attorney-client privilege to permit his bankruptcy counsel to testify whether he had advised the Debtor the funds were exempt homestead proceeds and as to bankruptcy disclosure requirements. The Debtor declined to waive the privilege.

The Debtor's assertions are not credible. He did not use the Residential Property sale proceeds to purchase, or take any steps to purchase, a homestead in Florida. He admitted purchasing a home in Florida "was not feasible." The Debtor understood the exemption process as established by his Schedule C. Schedule C contains various exemptions claimed by the Debtor pursuant to West Virginia statutory law, including a homestead exemption claimed in his travel trailer, which was purchased years prior to the

---

[9] Trustee's Exh. No. 7, Check No. 002274949.

sale of the Residential Property. The Debtor fully expended the West Virginia homestead exemption on the travel trailer.

The $12,000.00 constituted non-exempt property of the estate on the Petition Date, which the Debtor was required to disclose and turn over to the Trustee. His failure to disclose in Schedule B the $12,000.00 in his possession on the Petition Date constitutes a false oath or account. The omission of this asset was material. The Debtor made the false oath or account knowingly and fraudulently.

The Debtor, within one year of the Petition Date, utilized the Bank of America cashier's check process in an attempt to conceal the funds from his judgment creditors. He failed to disclose the $12,000.00 in his Schedules to further conceal the funds from his creditors and the Trustee. He perpetuated the concealment post-petition by failing to disclose and turn over the funds to the Trustee. The Debtor concealed the funds with the intent to hinder, delay, and defraud his creditors and the Trustee.

The Debtor has failed to fulfill the most fundamental and important obligations imposed upon debtors—full disclosure and truthfulness. He has not been forthright with the Court, his creditors, or the Trustee. The Debtor failed to make truthful and complete disclosures in his Schedules and Statement of Financial Affairs. He, knowingly and fraudulently, made numerous false oaths and accounts in his Schedules and Statement of Financial Affairs regarding material matters. He concealed property pre- and post-petition with the intent to hinder, delay, and defraud his creditors and the Trustee.

The Trustee has established by a preponderance of the evidence grounds for the denial of the Debtor's discharge. His discharge is due to be denied.

## **CONCLUSIONS OF LAW**

The Trustee filed a four-count Complaint seeking the denial of the Debtor's discharge pursuant to 11 U.S.C. Sections 727(a)(2)(A) and (a)(2)(B) (Count One); 727(a)(3) (Count Two); 727(a)(4)(A) and (a)(4)(D) (Count Three); and 727(a)(5) (Count Four).

The party objecting to a debtor's discharge carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991); Fed. R. Bankr. P. 4005. Objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. Schweig v. Hunger (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986).

The Trustee did not establish the elements of 11 U.S.C. Section 727(a)(3), which addresses the concealment, destruction, mutilation, falsification, or failure to preserve recorded information. The relief sought in Count Two shall be denied.

The Trustee did not go forward with the 11 U.S.C. Section 727(a)(4)(D) cause of action contained in Count Three of the Complaint. The relief sought pursuant to Section 727(a)(4)(D) shall be denied. The Trustee did not go forward with the 11 U.S.C. Section 727(a)(5) cause of action contained in Count Four. The relief sought in Count Four shall be denied.

### *11 U.S.C. §§ 727(a)(2)(A) and (a)(2)(B)*

Section 727(a) of the Bankruptcy Code sets forth a debtor shall be granted a discharge unless certain abuses have been committed by the debtor. A discharge will be denied where:

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or
(B) property of the estate, after the date of the filing of the petition.

11 U.S.C. §§ 727(a)(2)(A), (a)(2)(B) (2007).

A creditor asserting intent to defraud pursuant to Section 727(a)(2)(A) bears the significant burden of establishing actual fraudulent intent. Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 306 (11th Cir. 1994) (*citing* Wines v. Wines (In re Wines), 997 F.2d 852, 856 (11th Cir. 1993)). Constructive fraud is not adequate. Id. "Concealment under this section occurs when a debtor's interest in the property is not obvious, but the debtor continues to reap the benefits the property has to offer." In re Greene, 340 B.R. 93, 98 (Bankr. M.D. Fla. 2006) (*citation omitted*).

The Debtor went to great lengths pre- and post-petition to conceal his assets from his judgment creditors and the Trustee. The concealment was made with the intent to hinder, delay, and defraud his creditors and the Trustee. He, knowing the West Virginia State Court judgment had been entered against him, utilized an elaborate cashier's check process to conceal his cash assets and keep them out of the reach of his creditors. He perpetuated the concealment by failing to disclose cash assets of $12,000.00 on the Petition Date and to turn over those funds to the Trustee. The funds constituted non-exempt property of the estate pursuant to 11 U.S.C. Section 541(a) on the Petition Date and were subject to turnover pursuant to 11 U.S.C. Section 542(a).

The Trustee has established by a preponderance of the evidence the elements of 11 U.S.C. Sections 727(a)(2)(A) and (a)(2)(B). The Debtor is not entitled to a discharge pursuant to 11 U.S.C. Sections 727(a)(2)(A) and (a)(2)(B).

### *11 U.S.C. § 727(a)(4)(A)*

Section 727(a)(4)(A) of the Bankruptcy Code provides the Court shall grant the debtor a discharge, unless "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account." 11 U.S.C. § 727(a)(4)(A) (2007). The party objecting to discharge in a Section 727(a)(4)(A) proceeding must establish the debtor made the false oath knowingly and fraudulently. Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 619 (11th Cir. 1984).

The Eleventh Circuit has held a discharge should be denied where the omission from the Schedules or Statement of Financial Affairs is both fraudulent and material. Swicegood v. Ginn, 924 F.2d 230, 232 (11th Cir. 1991). The subject matter of a false oath is considered "material" and thus sufficient to bar discharge if it "bears a relationship to the bankrupt's business transactions or estate or concerns the discovery of assets, business dealings or the existence and disposition of his property." In re Chalik, 748 F.2d at 618.

It is irrelevant that a debtor does not intend to injure his creditors when he makes a false statement. Id. "A debtor has a paramount duty to consider all questions posed on a statement or schedule carefully and see that the questions are answered completely in all respects." In re Sofro, 110 B.R. 989, 991 (Bankr. S.D. Fla. 1990). It is not the job of the debtor to determine which of the questions are relevant or material. Haught v. U.S.,

242 B.R. 522, 526-27 (M.D. Fla. 1999). "Discharge may not be denied where the untruth was the result of mistake or inadvertence." Keefe v. Rudolph (In re Rudolph), 233 Fed. Appx. 885, 889 (11th Cir. 2007) (*citation omitted*).

The Debtor made numerous false oaths and accounts in his Schedules and Statement of Financial Affairs. He failed to disclose: the Huntington Bank account; $12,000.00 in cash assets; his interest in the farm implement business; the sales of real property in West Virginia and the income generated therefrom; his employment and Social Security income for 2006 and 2007; and the details of the West Virginia State Court Judgment. He failed to properly list both co-plaintiffs as creditors using their correct names in Schedule F. These omissions and misstatements were material to his bankruptcy case and were made knowingly and fraudulently.

The Debtor did not comply with the most elementary steps to fulfill his obligation as a debtor in bankruptcy. The Trustee has established by a preponderance of the evidence the elements of 11 U.S.C. Section 727(a)(4)(A). The Debtor is not entitled to a discharge pursuant to 11 U.S.C. 727(a)(4)(A).

A separate judgment in favor of the Trustee and against the Debtor consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 11th day of April, 2008.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge